**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**REAL PROPERTY LOCATED AT 6415 N. HARRISON AVE., FRESNO, CALIFORNIA APN:407-751-08,**<br><br>               **Defendant.** | **1:11-cv-00304-OWW-SKO**<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS (Doc. 12)** |

## I. INTRODUCTION.

On February 22, 2011, the United States filed a complaint for forfeiture in rem against Real Property Located at 6415 N. Harrison Avenue, Fresno, Fresno County, California. (Doc. 1).

On May 2, 2011, claimants Bok Hee Ee and Judy Ee ("Claimants") filed a motion to dismiss. (Doc. 12). The United States filed opposition on May 27, 2011. (Doc. 15). Claimants filed a reply on June 3, 2011. (Doc. 16).

## II. FACTUAL BACKGROUND.

The defendant in this action is real property located at 6415 North Harrison Avenue, Fresno, Fresno County, California, APN: 407-751-08 ("the Property"), described as follows:

> Lot 2 of Tract No. 3600, Craycroft Village, according to the map thereof recorded in Volume 42, Page 1 of Plats,

1

Fresno County Records. APN: 407-751-08

The recorded owners of the Property are Bok Hee Ee ("Ee"), a widow, and her daughter Judy C. Ee, a single woman, as joint tenants. Bok Hee Ee purchased the Property in 1993. On or about January 23, 2001, Bok Hee Ee opened a Home-Equity Line of Credit ("HELOC") with Bank of the West secured by the equity value of the Property.

Ee married Kwan Yong Choi ("Choi") in October 2004. The complaint alleges that an investigation conducted by Immigration and Customs Enforcement ("ICE") from February 2009 to February 2010 revealed that Ee and Choi used the HELOC to launder funds from fraudulent investment schemes perpetrated by Choi. Choi was indicted on May 27, 2010 for money laundering in violation of 18 U.S.C. §§ 1956 and 1957; Choi's criminal case is pending.

According to the complaint, Choi placed fraudulently obtained funds into a Bank of America business account number ***9021 ("9021 Account") and a personal Bank of America account number ***838 ("838 Account"). Choi used funds from the 9021 Account and 838 Account to fund checks deposited into the following accounts:

    a. Hanmi Bank account number ***753 dba Trinity California Theological Seminary controlled by Choi;

    b. Bank of America account number *** 575 in the name of Kwan Choi (hereafter "BoA575");

    c. Bank of the West account number ***286 in the name of Bok Ee (hereafter "BoW286");

    d. Bank of the West account number ***166 in the name of Bok Ee (hereafter "BoW166"); and,

    e. Bank of America account number ***159 in the name of Bok Choi, the married name of Bok Ee (hereafter "BoA159").

Funds from these five accounts were used to service the HELOC.

Funds from the HELOC were then placed back into Ee's Bank of America ***159 and Bank of the West ***166 accounts.

### III. **LEGAL STANDARD**.

Motions to dismiss in rem forfeiture actions are governed by Federal Rule of Civil Procedure 12(b) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

**3**

*U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri,* 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

Pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims, a forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G for Admiralty or Maritime Cl. and Asset Forfeiture Actions Rule E

**4**

requires the complaint to "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supp. R. E(2)(a) for Admiralty or Maritime Cl. and Asset Forfeiture Actions.

### IV. DISCUSSION.

**A. Statute of Limitations**

Claimants assert that the United States' action is time barred. Pursuant to 19 U.S.C. § 1621, a forfeiture action must be "commenced within five years after the time when the alleged offense was *discovered*." *United States v. 874 Gartel Drive*, 79 F.3d 918, 922 (9th Cir. 1996) (citing 19 U.S.C. § 1621). "The statutory period begins to accrue only upon discovery of the offense, not with the commission thereof." *Id*.

According to the complaint, the money laundering scheme underlying the United States' forfeiture action was not discovered until, at the earliest, February 2009, when the United States began its investigation into Choi and Bok Ee. (Compl. at 3). The complaint in this action was filed in 2011, within the five-year period proscribed by section 1621.

Claimants invoke the one-year statute of limitations set forth in 18 U.S.C. § 984(b). Section 984 applies:

> [i]n any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution...or precious metals.

18 U.S.C. § 984(a)(1). The United State's complaint does not seek forfeiture of the types of property identified in section

**5**

984(a)(1); the United States seeks only forfeiture of real property. By its own terms, section 984 does not apply to the instant action. *Id*. Section 1621 provides the applicable statute of limitations for the United States' forfeiture claim.

**B. Claimants' Arguments Regarding Traceability**

Claimants contend that "to forfeit property as direct 'traceable proceeds' the government literally has to trace the exact same identifiable assets from the tainting act into the res." (Motion to Dismiss at 9). Claimants cite no authority in support of their argument, which is contrary to Ninth Circuit law. Tracing of money for the purposes of section 981 does not require that the identical money be traced. *E.g.*, *United States v. Check No. 25128 in the Amount of $ 58,654.11*, 122 F.3d 1263, 1264 (9th Cir. 1997). As the Second Circuit has explained:

> Where the credit in a depositor's account represents the net results of transactions that include a deposit of drug money, there is a plausible argument to be made either that the account contains the "traceable proceeds" of the tainted deposit (so long as the balance has not fallen below the amount of the tainted deposit) or that any withdrawal (in excess of the tainted deposit) contains the "traceable proceeds" of such a deposit. Which approach reflects reality in any particular case will depend on the precise circumstances. For example, if a depositor placed a $ 175 check from his automobile insurer in payment of a damage claim into an account that contained $ 100 from a drug sale and the next day paid a $ 175 bill for car repairs, a fact-finder would be entitled to conclude that the $ 175 withdrawal did not contain "traceable proceeds" of the drug transaction but solely the "traceable proceeds of the insurance payment, with the tainted deposit remaining in the account. Obviously few cases will present facts that neatly match untainted deposits with withdrawals, and the real question therefore becomes which side bears the risk of the inevitable uncertainty that will arise in most cases. Congress has answered that question in the Government's favor by assigning it a lenient burden of proof in obtaining forfeiture of "traceable proceeds" of drug transactions.

*United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159-1160 (2nd Cir. 1986) *superceded on other grounds by statute as stated in United States v. Contents in Account No. 059-644190-69,* 253 F. Supp. 2d 789, 795 (D. Vermont 2003).

The only case cited in Claimants' motion concerning their traceability argument is *United States v. All Funds Presently on Deposit at Am. Express Bank*, 832 F. Supp. 542, 560 (E.D.N.Y 1993). The selective quotation from *All Funds* provided by Claimants, however, is from a passage in which the court was quoting a portion of the legislative history of section 984. Not only is *All Funds* inapposite, it does not even stand for the proposition Claimants cite it for: that "when proceeds are commingled in a bank account with clean money, the trail of 'directly traceable proceeds' ends." (Motion to Dismiss at 8).

The complaint alleges facts sufficient to support a reasonable belief that the government will be able to meet its burden of proof at trial of establishing that the Property is derived, at least in part, from proceeds traceable to offenses identified in section 981. *See, e.g., United States v. 3814 NW Thurman St.,* 164 F.3d 1191, 1196 (9th Cir. 1999) (increased equity value of real property traceable to tainted funds subject to forfeiture)*; see also United States v. 216 Kenmore Ave.*, 657 F. Supp. 2d 1060, 1069 (D. Minn. 2009) (holding that real property was "traceable to" money laundering activity where monies were used to pay property taxes and conduct renovations).[1]  Claimants' motion to dismiss the

---

[1] There are potential problems with the government's tracing based claims, but Claimants have not identified them.  It does not appear that the entire property is subject to forfeiture under the government's tracing-based claims; rather,

**7**

Government's tracing-based claims is DENIED, without prejudice.

**C. Claimants' Arguments Concerning 981(a)(1)(A)**

Claimants contend that the Property was not "involved in" the alleged money laundering transactions within the meaning of section 981(a)(1)(A).[2] Claimants aver that

> the fact that the line of credit was secured was merely incidental or fortuitous – it did not make the underlying criminal offense "less difficult or more or less free from obstruction or hindrance." *United States v. Schifferli*, 895 F.2d 987 (4th Cir. 1990).

(Motion to Dismiss at 10). In *Schifferli*, the Fourth Circuit adopted the facilitation approach to determining whether property was "involved in" criminal conduct. *See Schifferli*, 895 F.2d at 990. Although section 981(a)(1)(A) does not contain the words "facilitate" or "facilitating," numerous courts have concluded that

---

only the equity value of the property traceable to tainted funds appears to be subject to forfeiture. *See, e.g., NW Thurman St.,* 164 F.3d at 1196 (holding that increased equity value of real property traceable to tainted funds subject to forfeiture). Several district courts have noted a distinction between forfeiture claims against real property based on "traceability" and claims based on the property's actual involvement in money laundering. *E.g.*, *In re 650 Fifth Ave. & Related Props.*, 2011 U.S. Dist. LEXIS 34295 *100-101 n. 11 (S.D.N.Y. 2011) (noting distinction between 981(a)(1)(C) claims and 981(a)(1)(A) claims);*United States v. Real Prop. at 7401-7403 S. Racine*, 2010 U.S. Dist. LEXIS 31465 *24 (N.D. Ill. 2010) (same). Unlike the government's claim under section 981(a)(1)(A), the government's tracing-based claim may not apply to the entire value of the property, but rather only to the portion of the equity value traceable to laundered funds. This issue has not been briefed. Ultimately, it appears seems the government's tracing claims are redundant an unnecessary in light of the government's section 981(a)(1)(A) claim. Tracing is unnecessary to the extent that the property was "involved in" laundering.

[2] Claimants also invoke the "substantial connection" requirement set forth in 18 U.S.C. § 983(c)(3). Section 983(c)(3) sets forth the applicable burden of proof in cases where the government's theory is that property was involved in the commission of an offense. The government need not satisfy its burden of proof at the pleading phase, however. *See, e.g.*, *United States v. $ 11,500.00 in United States Cur*rency, 2010 U.S. Dist. LEXIS 76868 (D. Oregon 2010) (distinguishing pleading burden from burden at trial under section 983). As discussed above, the United State's has satisfied its pleading burden by alleging facts sufficient to support a reasonable belief that the Property was involved in money laundering.

the phrase "property involved in" includes property used to facilitate an offense. *E.g., United States v. All Monies In Account No. 90-3617-3*, 754 F. Supp. 1467, 1473 (D. Hawaii 1991); *see also In re 650 Fifth Ave. & Related Props.*, 2011 U.S. Dist. LEXIS 34295 *92-94 (S.D.N.Y. 2011) (collecting cases).[3]

Property need not be indispensable to the commission of an offense in order to be "involved in" the offense. *See, e.g., United States v. 3639-2nd St., N.E.*, 869 F.2d 1093, 1096 (8th Cir. 1989). As the district court explained in *All Monies In Account No. 90-3617-3*:

> Facilitating property is forfeitable if it makes the underlying criminal activity less difficult or "more or less free from obstruction or hindrance." There must be more than an incidental or fortuitous connection between the property and the illegal activity, but the property need not be indispensable to the commission of the offense. Nor does the property need to be used exclusively for illegal activity.

754 F. Supp. at 1473 (citations omitted).

Several courts have held that real property is "involved in" a money laundering offense if laundered funds are used to make payments toward purchase of the property and to pay for improvements. *See In re 650 Fifth Ave,* 2011 U.S. Dist. LEXIS 34295 at * 99 (citing *United States v. Myers*, 21 F.3d 826, 831 (8th Cir.

---

[3] Claimants attempt to distinguish *In re 650* on the basis that, in that case, "the real property being forfeited there was itself the alleged vehicle generating the income from specified unlawful activity." (Reply at 6). However, the distinction Claimants raise is actually harmful to their position. *In re 650* held "here...[t]he Building was *merely* the source of the money laundered; it was *not involved in the laundering itself*. The Building as a whole therefore cannot be forfeited as having been 'involved in' money laundering." *Id*. (emphasis added). The basis for the holding in *In re 650* was not that the building was the source of the tainted money; rather, the court held that the building was subject to forfeiture because tainted money was used to maintain the building. *Id*. at *100. Here, the complaint alleges that tainted money was used to increase the equity value of the Property and that the Property itself was used to facilitate money laundering.

1994); *United States v. 10.10 Acres Located on Squires Road*, 386 F. Supp. 2d 613, 616 (D.N.C. 2005); *United States v. Schlesinger*, 261 Fed. Appx. 355, 36 (2nd Cir. 2008); and *United States v. 216 Kenmore Ave.*, 657 F. Supp. 2d 1060, 1069 (D. Minn. 2009) (tracing theory)). In *Schlesinger*, a defendant deposited the proceeds of a fraudulent scheme into the business operating accounts of companies he ran at the premises and then used funds from the operating accounts to pay the companies' monthly lease and tax expenses. 261 Fed. Appx. At 361. The Second Circuit affirmed the district court's finding that the premises "served as a conduit for the proceeds of illegal transactions," making the premises subject to forfeiture. *Id*. Similarly, in *Myers*, the Eight Circuit held that a farm was forfeitable because it was "involved in criminal activity" where a defendant made substantial payments on a real estate contract for the farm and paid for improvements on the farm with laundered funds.

Here, the complaint alleges sufficient facts to support a forfeiture claim under the theory that Property was the conduit through which a money laundering scheme was carried out. Absent the Property, Choi and Ee would not have had access to the ELOC, which facilitated numerous transfers of substantial amounts of money to and from accounts involved in the money laundering scheme alleged in the complaint. It cannot be disputed that the Property, through the ELOC, made the alleged money laundering scheme less difficult because it provided access to an apparently legitimate source of funds. Claimants' attempt to separate the ELOC from the Property is of no avail; absent the Property, the $70,000.00 equity line of credit would not have been available, and there

would have been no source of apparently legitimate funds to deposit into the various accounts held by Ee and Choi.

Contrary to Claimants' repeated contention, the United State's forfeiture claim under section 981(a)(1)(A) does not rely on the "expanding drop of ink theory;" accordingly, Claimants citation to *United States v. $3,148,884.40 (Bital)*, 76 F.Supp.2d 1063, 1067 (C.D. Cal. 1999) for the proposition that "the 'expanding drop of ink' or 'facilitating bank account'" is no longer viable is of no avail. (Motion to Dismiss at 11). The United States claim under section 981(a)(1)(A) is based on the contention that the Property was used to facilitate money laundering, not that the Property is subject to forfeiture because its equity value was paid for in part by tainted funds (this theory is the basis of the United States claims under section 981(a)(1)(C) and 981(a)(1)(D)). Claimants' motion to dismiss is DENIED, without prejudice.

**ORDER**

For the reasons stated, Claimants' motion to dismiss is DENIED, without prejudice.

IT IS SO ORDERED.

**Dated:   June 27, 2011**           /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE